Judge Underwoov,
delivered the opinion of the court.
John CrozieR, in his lifetime, being in embarrassed circumstances, on the 19th of April, 1820, mortgaged to James T. Pendleton a lot in Bardstown, for the purpose of securing him for having as surety, replevied three executions, which issued against John Black & Co. of which firm, said Crozier was a member. On the Sth of June, 1820, said Crozier mortgaged the. *515 same lot to James T. Pendleton and Peter W. Gray-son, jointly, for the purpose of indemnifying them against loss, in consequence of their having replevied debts as sureties, to the amount of $¡ 1900. This mortgage to Pendleton and Grayson, was acknowledged before the clerk on the 19th of September, 1820, and admitted to record. On the 12th day of June, 1820, said Crozier con.eyed the same lot, with other property in trust, to Benjamin Chepeze and others, for the purpose of securing the payment of sundry specified debts. The deed of trust was acknowledged by the parties to it before the clerk, on the 29th of June, 1820, and admitted to record.
In 1821, James T. Pendleton filed a bill against the' heirs of Crozier, with a view to foreclose their equity of redemption under the mortgage of April. Pending this bill, the trustees of Crozier filed a cross bill in the nature of a bill of interpleader against said Pendleton and Crozier’s heirs, setting up their deed of trust, of the 12th of June, and praying for a sale of the- whole property conveyed in trust and an appropriation of the proceeds, in conformity thereto. In February, 1822, the court decreed in favor of Pendleton, upon his bill for the sum of $552 99 cents, with interest, and directed, if it was not paid before a given day, that Crozier’s trustees or any two, as commissioners, should sell the mortgaged premises or so much thereof, as would be sufficient to pay the debt, interest and costs of suit» In the same decree, the court directed the trustees to proceed and sell the property conveyed to them in trust, or so much thereof, as might be required to pay the debts named' in the deed of trust, and to report their proceedings. The bill and cross bill, were tried by consent, and the complainants in each, agreed upon the record, to accept notes in discharge of the decree upon the bank of Kentucky, and the bank of the commonwealth.- The lot was sold for $2200. Peter W.. Grayson was not known in these proceedings.
In July, 1826, Pendleton and Grayson, as joint complainants, filed their bill against Crozier’s heirs and trustees, alleging that they had been compelled to pay the debts ,to indemnify against which the mortgage of the 5th of June, had been executed, and setting forth the sale of the lot by -the trustees, and their refusal to- *516 appropriate the proceeds to the indemnity of tbe com-pjainants, without a decree of the chancellor to that effect.
The recording-of a deed of theacknowl-edgement of a mortgage, if jivered Sfirste" and acknowl-edgedintime, does not con-lien.UP 1
Crozier’s trustees answer, admitting the sale of the lot, for the sum stated, in notes on the bank of the commonwealth, make their answer a cross bill, and pray that the complainants may be compelled to confirm the title of Slaughter, the purchaser of the lot.
Grayson answered the cross bill of the trustees and made his answer a cross bill against his co-complainant, Pendleton, and in his answer, he charged that he had paid all the debts designed to be secured by the mortgage of the 5th of June, except !|100 and therefore, he prayed that the court might render a separate decree in his favor, for the sums paid by him. It appears that the cause was continued “for revivor against the defendant, Pendleton, to cross bill of complainant by rea», son of his death.” From this awkward entry, it may be-inferred, that Pendleton died during the progress of the cause, and before it was finally disposed of. At the term next succeeding this continuance, sundry persons styling themselves heirs and legal representatives of James T. Pendleton, deceased, filed an answer to the cross bill exhibited by Grayson against said Pendleton, which answer admits the allegations of the cross bill to' be true.
, The court decreed that Crozier’s trustees should pay Grayson §1067 16 centsj with interest and. costs, and that the trustees should pay Burr Harrison and others, the persons who answered as the heirs of James T. Pen-dleton, deceased $100, with interest. To reverse this decree, the trustees have prosecuted this writ of error with supersedeas.
It is contended by the .trustees, that their deed of trust confers a claim superior to that derived by Pendle-^051 an<^ Glrayson, under the mortgage of the 5th of June, because the deed of trust was recorded before the mortgage was acknowledged. If the date of the acknowledgement before the clerk in September, should be regarded as the date of the delivery of the mortgage, instead of the 5th. of June, when it purports on. its face to have been executed, then the ground assumed by the trustees is tenable. This point has been settled *517 against the trustees in the case of the Breckenridges vs. Todd, III Mon. 53, to which we- refer as a complete answer to the argument urged in their behalf.
If sureties pay, debts of prin-cipnl in depreciated paper or pay less than nominal.amount, error to decree them re-> muñeration to' greater extent than value actually paid, ai-d it is competent Yor the court to direct the application of fund in hands of trustee to such paymeut.
Error to des-cree in favor of one not praying a decree.
There are errors however, sufficient for the reversal of the decree. It is manifest, that the lot was sold by the trustees under the decree for notes on the bank of the commonwealth. • It appears from the endorsements made on the executions which Pendleton and Grayson discharged as sureties for Crozier and Black, that notes on the bank of Kentucky and bank of the commonwealth might be received by the officer in payment. It cannot be believed, that any thing else was paid Notwithstanding this, the decree rendered is for lawful money of the United States, thus decreeing to the complainants more than they are entitled to, and taking the excess from the trust fund, to the injury of the trustees and cestui que trusts or throwing its loss upon the trustees individually.
It is contended by the trustees, that the complainants could only proceed in rem. We think otherwise, under the circumstances of this case. The lot had been sold under the first mortgage to Pendleton, and also under the deed of trust. The complainants do not desire to disturb the sale. The trustees prayed for its confirmation. It was therefore proper to ietthesale stand, and to dispose of the money arising from it as equity might require. If the court had directed the trustees to pay Grayson the amount due him in notes on the bank of the commonwealth, we should have let the decree stand in respect to him. We think it competent for the court to reach the notes of the bank of the commonwealth in the hands of the trustees, because they were acting as fiduciaries, both under the deed of trust and the decree of the court under which the the lot was sold.
We perceive no ground, on which to sustain the decree in favor of Harrison and others, as heirs of Pen-dleton. His executor or administrator, was entitled to the money and not the heir. There was no attempt to revive the suit after the death of Pendleton, so far as he had been interested, either in the name of the heirs or the personal representatives. There is nothing in the record to show that either the heirs, executors or administrator, asked for a decree against the trustees of *518 Crozier. It was, therefore, improper to give one. There is not, it may also be remarked, a particle of’ proof, showing who the heirs of Pendleton are.
Suggestions by counsel for Grayson.
Chapeze and T. T. Crittenden, for plaintiffs; Denny, for defendants.
It does not appear, that Grayson ever filed a bill of revivor against Pendleton’s heirs and personal representatives, afier his death. The personal representative was a necessary party to Grayson’s cross bill, and we deem it proper on the return of the cause, to allow time for making him a party, and if, when he is brought before the court, he should ask a decree against Crozier’s trustees for the amount paid.by Pendleton, in discharge of the debts secured by the mortgage of the 5th of June, we think it proper to give it upon the facts as they now appear; It can make no difference to the trustees how the money is divided between Grayson and Pendleton’s representative, provided, no more is taken out of their hands, arising from the sale of the lot, than has-been expended by Grayson and Pendleton, in discharge of the debts, for-which the lot was mortgaged.
Wherefore, the decree-is-reversed, aud the cause remanded for proceedings not inconsistent with this opinion. The plaintiffs in error must recover their costs.

The counsel for defendant filed the following suggestion for a modification of the decision of the court, as regarded the defendant, Grayson.

The case, as to Grayson, is reversed, solely because the payments made by him, are supposed to have been made in commonwealth's paper, and his deed was for specie.
It is suggested that there is neither allegation or proof to this point. The- court has presumed it from an endorsement on the executions. It will be found that Grayson’s payments were made before the commonwealth’s bank went into operation.
To which the court made the following response, by Judge Underwood.
The bank of the commonwealth was chartered in November, 1820. The date of issuing its notes, first *519 thrown into circulation we know not. It is not shown in the record. The executions which Grayson paid, issued some time after the passage of the act of incorporation, and were endorsed, that notes on the might be received in payment. So far as we have been able to ascertain the dales of Grayson’s payments, they were not made until some time after the executions issued. The sheriff in many of his receipts, does not state the date of payment. There is nothiug upon which the suggestion can rest, which states that it will be found, that Grayson’s payments were made before the commonwealth’s bank went into operation. All the evidence conduces to a contrary belief. Some of the sheriffs receipts bear date in September and November, 1821. While the court will always receive with pleasure, suggestions made with the view to correct those errors which, through the press of business, are often inevitable, it is very desirable that counsel should not make them upon matters of fact, before they are well assured that the record will support them. The additional trouble imposed on the court by such a course, is very erroneous, and it_retards the despatch of other business.
The opinion must remain unchanged.